NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SHAWN ZAMOR, *Plaintiff,* v. CAROLYN W. COLVIN, Acting Commissioner of Social Security, *Defendant.* | No. 15-8884 OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE.**

Before the Court is Shawn Zamor's ("Plaintiff") request for review, pursuant to 42 U.S.C. §§ 1383(c)(3), 405(g), of the Commissioner of Social Security Administration's ("Commissioner") denial of Plaintiff's application for supplemental security income ("SSI") benefits. Plaintiff argues that: (1) the Commissioner failed to explicitly weigh probative evidence as required by law; and (2) the Commissioner's conclusions were not supported by substantial evidence. For the reasons set forth in this Opinion, the Court **VACATES** and **REMANDS** the Commissioner's final decision.

**I. STANDARD OF REVIEW AND APPLICABLE LAW**

**A. Standard of Review**

The Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). The Commissioner's application of legal precepts is subject to plenary review. Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003). Factual findings must be affirmed if they are supported by substantial evidence. Id. Substantial evidence "means such relevant evidence as a

reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). Stated differently, substantial evidence consists of "more than a mere scintilla of evidence but may be less than a preponderance." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004). Even if this Court would have decided the matter differently, it is bound by the Commissioner's findings of fact so long as they are supported by substantial evidence. Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (quoting Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001)).

    **B.    The Three-Step Child Disability Test[1]**

A child will be considered disabled under the Social Security Act (the "Act") if: (1) the child is not working; (2) the child has a "severe" impairment or combination of impairments; and (3) the impairment, or combination of impairments, was of Listing-level severity, meaning the impairment(s) meets, medically equals, or functionally equals the severity of an impairment listed in 20 C.F.R. § 404. T.C. ex rel. Z.C. v. Comm'r of Social Sec., 497 Fed. App'x 158, 160 (3d Cir. 2012) (citing 20 C.F.R. § 416.924(a)). In applying this test, the Commissioner must consider all evidence in a claimant's case record, including medical evidence, test scores, information from medical sources, and statements from non-medical sources who know the claimant. 20 C.F.R. § 416.924a(a).

In step three, "functional equivalence" is determined by considering the following six domains of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for

---

[1] Plaintiff was born August 16, 1997 and was sixteen years old at the time of the Commissioner's decision, making him a child under the Act. See 20 C.F.R. § 416.926a(g)(2)(v).

2

oneself; and (6) health and physical well-being. T.C. ex rel. Z.C., 497 Fed. App'x at 160 (quoting 20 C.F.R. § 416.926a(b)(1)).

"A medically determinable impairment or combination of impairments functionally equals a listed impairment if it 'result[s] in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain." Id. (quoting 20 C.F.R. 416.926a(a)). A "marked" limitation in a domain is one that "interferes seriously" with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation is one that "interferes very seriously" with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i).

## II. BACKGROUND

### A. Procedural History

On April 29, 2011, Plaintiff's mother filed an application for SSI on his behalf, alleging that Plaintiff became disabled on October 31, 2003 due to attention deficit hyperactivity disorder ("ADHD"), oppositional defiant disorder ("ODD"), and a learning disability. Administrative Transcript ("Tr.") 136, 146. Plaintiff's claim was denied initially on February 24, 2012 and upon reconsideration on January 24, 2013. Tr. 62-72, 74-84. On July 23, 2014, the Honorable Richard West (the "ALJ") issued an opinion concluding that Plaintiff was not disabled. Tr. 17-32. On October 22, 2015, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. Tr. 1-6. Plaintiff appealed to this Court on December 28, 2015. ECF No. 1.

### B. Factual Background

#### 1. Early Childhood and 2008 Evaluation

Plaintiff has been in special education since he was four years old. Tr. 264. At the age of six, he was diagnosed with ADHD and ODD. Tr. 225. In January 2008, at the age of ten, Plaintiff

3

underwent a school evaluation that assessed his academic, cognitive, and social/emotional functioning. Tr. 224-31. The assessment highlighted Plaintiff's history of attention issues and impulsive and restless behaviors. Tr. 230. During the assessment itself, Plaintiff was distracted easily and often needed to be refocused. Tr. 226-27. The assessment concluded that: (1) directions and lessons should be repeated and reinforced to Plaintiff and that he should be given verbal reminders to return to the task at hand; (2) Plaintiff "is capable of making academic gains" but "deficits in processing speeds and memory have impacted his abilities"; and (3) Plaintiff should receive extra time to complete assignments. Tr. 229.

### 2. 2010 Individual Education Plan

On November 15, 2010, at the age of thirteen, Plaintiff received an individualized education plan ("IEP") from Rahway Public Schools. Tr. 268-86. In the IEP, Plaintiff's teachers noted that he was disruptive in class and struggled to concentrate on class assignments. Tr. 272-73. According to the IEP, Plaintiff's emotional functioning, inattentiveness, and impulsivity impacted his performance in the classroom. Tr. 274. General education classrooms were deemed potentially harmful to Plaintiff's academic and emotional growth. Tr. 280. The IEP proposed self-containment for three periods every day and in-class assistance in language arts. Tr. 284.

### 3. 2011 Individual Education Plan

After transferring to Elizabeth Public Schools, Plaintiff received a new IEP in March 2011. Tr. 234-62. The IEP noted that Plaintiff exhibited heightened levels of distractibility and impulsivity that interfered with his functioning and academic growth. Tr. 250. According to the IEP, those behavioral difficulties also impaired Plaintiff's learning process and social development. Id. The IEP therefore recommended that Plaintiff continue to receive individualized instruction in a small, structured learning environment. Id.

Later in 2011, Plaintiff's teachers again noted that Plaintiff's "extreme, erratic behavior" held him back from performing "on level" in class. Tr. 319. Moreover, they noted that Plaintiff struggled to get along with classmates and disrupted class with random outbursts, such as "barking at the other students and making other strange animal noises." Id.

### 4. 2012 Individual Education Plan

Plaintiff's 2012 IEP determined that Plaintiff needed counseling and the "highly structured environment of a self-contained classroom." Tr. 329. Plaintiff's teachers again observed that Plaintiff's distractibility and lack of self-control interfered with his ability to complete assignments and demonstrate aptitude. Id. Although one teacher noted that Plaintiff demonstrated improvement since the beginning of the school year, the teacher explained that Plaintiff also received special attention, including "more time, repetition, multiple drafts of essays, tasks broken down into smaller steps, and one on one instruction." Id.

### 5. Teacher Questionnaire

In November 2011, Janet McGarvey, Plaintiff's ninth-grade special education English teacher, completed a questionnaire about Plaintiff's symptoms of disability. See Tr. 312-16. She noted that Plaintiff often had difficulty paying attention to tasks and following through on instructions. Tr. 312. She also noted that Plaintiff did not seem to listen when spoken to directly and sometimes had difficulty organizing work and activities. Id. According to Ms. McGarvey, Plaintiff was often irritable or explosive, excessively talkative, and highly distractible. Tr. 315.

### 6. Psychological Counseling

From October 27, 2011 to February 2, 2012, Plaintiff received counseling at Trinitas Regional Medical Center ("TRMC") related to his ADHD and ODD diagnoses. Tr. 362. Records from TRMC show that Plaintiff was referred for counseling due to defiance toward adults,

5

difficulty focusing in school, impulsivity, verbal aggression, and a low frustration tolerance. Id. Notes from TRMC also evidence Plaintiff's significant trouble at school, including failed classes and a ten-day suspension. Tr. 365-85.

### 7. Dr. Perdomo's Reports

Plaintiff was evaluated twice by Dr. Ernesto L. Perdomo, a psychologist hired by the Commissioner. Tr. 263-66, 288-290. In the first evaluation, dated February 9, 2012, Dr. Perdomo acknowledged Plaintiff's ADHD and ODD diagnoses and history of special education but also noted that Plaintiff can understand instructions of moderate complexity and that he "functions within age bracket." Tr. 264. Dr. Perdomo found that Plaintiff's short-term memory was good, long-term memory was fair to good, concentration was fair, and intelligence appeared to be within the low average to average range. Tr. 265. Dr. Perdomo concluded that Plaintiff's learning disability was mild to moderate but noted that "[h]is condition shows that he need[s] special education." Id.

Dr. Perdomo conducted his second evaluation of Plaintiff on January 17, 2013. Tr. 288. The second evaluation yielded similar results with respect to Plaintiff's memory, intelligence, and concentration. Tr. 289-90. Dr. Perdomo observed that Plaintiff's "[o]verall condition at the present time appeared to be rather moderate." Tr. 290. Notably, however, Dr. Perdomo also found that Plaintiff's "condition is such that he can only function in a special education full-time self-contained program." Id.

### C. The ALJ's Decision

The ALJ summarily addressed steps one and two of the three-part child disability test. First, he found that Plaintiff had not engaged in substantial gainful activity since the SSI

6

application date. Tr. 23. Second, he found that Plaintiff's ADHD, ODD, and learning disability were severe impairments that caused more than minimal functional limitations. Id.

At step three, the ALJ found that none of Plaintiff's impairments together or individually met, medically equaled, or functionally equaled the severity of a listed impairment. Tr. 23-31. The ALJ found less than marked limitations with respect to four domains of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; and (4) and caring for yourself. Id. The ALJ found no limitations with respect to: (1) moving about and manipulating objects; and (2) health and physical well-being. Id. Accordingly, the ALJ found that Plaintiff failed step three of the analysis under 20 C.F.R. § 416.924(a) and thus was not disabled as defined under the Act. Tr. 31.

### 1. Supporting Evidence Considered

In support of his findings, the ALJ granted "great weight" to the opinions of the Commissioner's medical consultants. Tr. 25; see Tr. 62-72, 74-84. Notably, neither of the medical consultants explicitly weighed any of the counterevidence supporting Plaintiff's claimed functional limitations. See Tr. 62-72, 74-84. The ALJ found that the medical consultants' findings were corroborated by the record evidence, including Dr. Perdomo's evaluations, Plaintiff's 2008 school evaluation, and the testimony of Plaintiff's mother at a hearing conducted on April 1, 2014. Tr. 25; see Tr. 37-60, 224-31, 263-66, 288-90.

Specifically, in finding a less than marked limitation with respect to acquiring and using information, the ALJ noted Plaintiff's score of 77 on the full-scale IQ test conducted as part of his 2008 evaluation. Tr. 26. He also noted Dr. Perdomo's observations that Plaintiff was able to follow instructions of medium complexity, that Plaintiff "functioned within age bracket," and that

7

Plaintiff's thought process was well-organized and focused. Id. The ALJ credited Dr. Perdomo's opinion that Plaintiff's condition overall appeared to be rather moderate. Tr. 26-27.

With respect to attending and completing tasks, the ALJ noted that Plaintiff's mother testified that: (1) Plaintiff was able to sit for a whole day playing videogames and drawing; and (2) Plaintiff performed well in some classes but not in others, depending on his relationship with the teacher. Tr. 27. The ALJ again noted Dr. Perdomo's observation that Plaintiff's thought process was well-organized and focused. Tr. 28. He credited Dr. Perdomo's opinion that Plaintiff's learning disability appeared to be mild to moderate. Id.

In analyzing Plaintiff's ability to interact and relate to others, the ALJ cited Plaintiff's positive demeanor toward Dr. Perdomo as well as his examiner during the 2008 school evaluation. Tr. 29. The ALJ also pointed to Plaintiff's own admission that he has friends and goes out with them. Id.

### 2. Contradictory Evidence Considered

Throughout his opinion, the ALJ simply noted evidence of functional limitations without explaining the weight, or lack thereof, he was affording to it. For example, in the ALJ's discussion of the 'acquiring and using information' domain, he stated the following:

> The claimant has been placed in a full-time, self-contained special education program, mostly due to his behavior, and not for academic purposes. Complaints include hyperactivity, and oppositional behavior. The claimant's heightened levels of distractibility and impulsivity interfere with his social functioning and academic growth. School psychological and intelligence testing demonstrates continued improvement in academic areas, but distractibility on examination, with the need to be refocused.

Tr. 26 (citations omitted). Yet, the ALJ did not further discuss this evidence or attempt to reconcile it with conflicting evidence. He did not explain whether the evidence was considered and rejected, or simply ignored.

The ALJ repeated that approach when discussing the other areas of functionality: attending and completing tasks, interacting and relating with others, and caring for yourself. See Tr. 27-31. In fact, there is only one instance in the entire opinion where the ALJ cites evidence of Plaintiff's functional limitations and provides his reasoning for discounting that evidence. He mentions Ms. McGarvey's teacher questionnaire but notes that she had only known Plaintiff for three months at the time it was completed. Tr. 25. Other than that, the record's probative evidence of Plaintiff's functional limitations is either unaddressed or mentioned in passing.

### III. Analysis

Plaintiff seeks remand on the basis that the ALJ failed to explicitly weigh probative evidence as required by law. The Commissioner's brief focuses on the administrative record without meaningfully addressing this argument. The Court agrees with Plaintiff. The ALJ impermissibly rejected evidence of impaired functionality without explanation and failed to reference, let alone discuss, other relevant evidence.

#### A. An ALJ's decision must clearly explain the basis on which it rests

In Cotter v. Harris, the Third Circuit held that an ALJ must provide "a clear and satisfactory explication of the basis on which [his decision] rests." 642 F.2d 700, 704 (3d Cir. 1981). In doing so, an ALJ must consider all pertinent evidence and explain the reasons for discounting contradictory evidence. Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121-22 (3d Cir. 2000). This explanation is needed to permit a reviewing court to determine whether the reasons for rejection were improper. Cotter, 642 F.2d at 706-07. Where probative and available evidence is not explicitly weighed, remand is appropriate. Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979) (citations omitted).

#### B. The ALJ improperly discounted probative evidence without explanation

Here, the ALJ failed to explain his basis for rejecting probative evidence related to four areas of functionality: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; and (4) caring for yourself. Tr. 25-31. The ALJ's discussion of these domains of functioning was cursory, and he failed to explain whether and why he discounted the evidence of impaired functionality he cited. Remand is appropriate on that basis. See Dobrowolsky, 606 F.2d at 407.

As one example, the ALJ noted with respect to the first two domains that Plaintiff "has been placed in a full-time, self-contained special education program, mostly due to his behavior, and not for academic purposes." Tr. 26-27. The ALJ did not explain, however, whether or why he felt the self-containment, or the serious behavioral issues underlying the self-containment, did not support marked functional limitations. An ALJ has responsibility to explicitly consider the effects of structured or highly supportive settings in determining the presence of a disability. See A.B. on Behalf of Y.F. v. Colvin, 166 F.Supp.3d 512, 520 (D.N.J 2016) (citing 20 C.F.R. § 416.924a(b)(5)). The ALJ also referenced a finding in Plaintiff's 2011 and 2012 IEPs that Plaintiff's "heightened levels of distractibility and impulsivity interfere with his social functioning and academic growth." Tr. 27. It is unclear whether the ALJ considered and rejected this conclusion or simply ignored it.

The same goes for the ALJ's discussion of Plaintiff's ability to interact and relate with others. The ALJ acknowledged "recent reports [that] indicate social isolation" as well as 2010 school reports that indicate that Plaintiff "talked excessively, was disruptive in class, and . . . had difficulty interacting with his peers." Tr. 29. But the ALJ does not weigh this evidence at all or explain why it does not support a finding of marked limitations.

    **C.**    **The ALJ failed to address whether it considered other evidence of disability**

The ALJ's decision also ignored other evidence of disability altogether, such as the finding in Dr. Perdomo's report that Plaintiff's "condition is such that he can only function in a special education full-time self-contained program." Tr. 290. As discussed above, consideration of Plaintiff's placement in that structured setting is specifically required under the Act. See 20 C.F.R. § 416.924a(b)(5). The ALJ did not address the conclusion in Plaintiff's 2008 assessment that Plaintiff "is capable of making academic gains" but that "deficits in processing speeds and memory have impacted his abilities." Tr. 229. The ALJ also failed to address that assessment's recommendation that Plaintiff receive extra time to complete assignments as a result. Id. Thus, although the ALJ discussed Dr. Perdomo's evaluations and the 2008 assessment, because he failed to address the specific findings in those reports that weigh in Plaintiff's favor, the Court cannot tell whether the ALJ properly considered and rejected that evidence, or whether he failed to consider it at all.

Finally, the ALJ made no mention of Plaintiff's counseling at TRMC or the many specific observations in Plaintiff's 2010, 2011, and 2012 IEPs regarding Plaintiff's limited functionality in classroom settings. The Court notes that the IEPs represent years of evidence from some of the people who knew Plaintiff best—his teachers. As discussed, Plaintiff's teachers outlined behavioral issues that consistently prevented Plaintiff from functioning in a normal educational environment. The ALJ references them only in passing.

The omission of this evidence from the ALJ's opinion and his failure to provide reasons for discounting other evidence compels remand. See A.B. on Behalf of Y.F., 166 F.Supp.3d at 522 (remanding because ALJ failed to explicitly weigh evidence); Cadavid v. Comm'r of Soc. Sec., No. 12-07214, 2014 WL 839453, at *7 (D.N.J. Feb. 26, 2014) (same); Abreu ex rel. A.M. v.

Comm'r of Soc. Sec., No. 11-4942, 2012 WL 3927061, at *8 (D.N.J. Sept. 6, 2012) (same). In remanding today, the Court makes no factual findings.

## IV. CONCLUSION

For the reasons stated above, the Court finds that the ALJ failed to explicitly weigh all probative evidence of disability. The ALJ's decision is **VACATED** and **REMANDED** for further proceedings consistent with this Opinion. On remand, the ALJ is directed to address all evidence of impaired functionality as well as his reasons for rejecting or discounting that evidence. An appropriate Order accompanies this Opinion.

Date: October 30, 2018

/s/ *Madeline Cox Arleo* .
**Hon. Madeline Cox Arleo**
**UNITED STATES DISTRICT JUDGE**